### CINCINNATI MUNICIPAL COURT LAW INVALID.

Common Pleas Court of Hamilton County.

THE STATE OF OHIO, EX REL JOHN RUBY, v. JAMES D. TEMPLETON AND WILLIAM J. BAKER v. SAMUEL W. BELL.

Decided, September 24, 1913.

*Constitutional Law—Act Creating a Municipal Court for Cincinnati—Rendered Invalid by Confusing the Administrative Function of Making an Appointment with the Legislative Function of Prescribing How it Shall be Made—Provision for a Presiding Judge is a Creation of a Public Office—103 O. L., 279.*

1. The legislative act providing for a Municipal Court for the city of Cincinnati (103 Ohio Laws, 279) is rendered invalid by reason of the fact that the General Assembly, in providing for a presiding judge with functions, emoluments and term of office different from that of the other judges of that court, created an office and by the naming of the present police judge as presiding judge of the said court attempted to exercise an appointing power not referred to among the exceptions contained in Section 27, Article II of the Constitution.

2. Inasmuch as the duties prescribed for the presiding judge are bound up with the duties set forth for the associate judges, and the duties of the associate judges are dependent upon those of the presiding judge, the purpose of the act is incapable of fulfillment without the presiding judge, and the entire act becomes inoperative.

*George H. Silverman,* for John Ruby.
*Fredriks & Huffman,* for James D. Templeton.

*Burch, Peters & Connolly* and *Walter K. Sibbald,* for William Baker.

*Alfred Bettman,* Solicitor of Cincinnati, *amicus curiae.*

GEOGHEGAN, J.

Both of these cases involve the construction of the act of April 18, 1913, entitled an act providing for enlarging and extending the jurisdiction of the police court of the city of Cincinnati, and changing the name of such court to the Municipal Court of Cincinnati, as found in Volume 103 of the Ohio Laws, page 279.

In the Ruby case the relator seeks to compel the defendant, James D. Templeton, a justice of the peace in and for Cincinnati township, Hamilton county, Ohio, to remove a certain cause pending in his court to the Municipal Court of Cincinnati.

In the Baker case the plaintiff seeks to enjoin the defendant, Samuel W. Bell, a justice of the peace in and for Cincinnati township, Hamilton county, Ohio, from removing a cause pending in his court to the Mupnicipal Court of Cincinnati.

The act, in Section 42 thereof, provides for the removal of causes from the courts of justices of the peace in Cincinnati township to the Municipal Court of Cincinnati.

The question involved in both cases is the constitutionality of said act.

The act provides in Section 1, that the police court in the city of Cincinnati shall be known hereafter as the Municipal Court of Cincinnati.

Section 2 is as follows:

"The municipal court shall hereafter consist of five judges, one of whom shall be presiding judge, and the present police judge of Cincinnati shall be hereafter presiding judge of the municipal court until the expiration of his present term, and all of said judges shall, at the time of their election or appointment, be qualified electors and residents of the city of Cincinnati and shall have been admitted to the practice of law for not less than four years."

Section 3 provides for the manner of electing the judges, and further specifically provides that the presiding judge shall be separately nominated and elected as such.

Section 4 provides for the salary of the judges, and provides that the presiding judge shall receive the sum of $6,000 per annum, which sum is $2,000 in excess of the salaries provided for the other judges of the court.

Section 14 provides the various duties of the presiding judge. They are in substance the general superintendence and distribution of the business of the court, the duty of making the annual report of the work of the court to council, and the receiving of the reports of the other judges of the court.

Section 17 provides that it shall be the duty of the presiding judge of the municipal court to cause to be interrogated all jurors summoned for service in the municipal court and to cause to be inquired into the qualifications of such jurors and to cause to be rejected from service as jurors all persons who do not appear to possess the qualifications required by law, and to designate one of the associate judges to conduct the examination of said jurors and the preparation of jury lists and to pass upon the qualifications of jurors.

Section 19 provides that the presiding judge may continue the session of any term of said court beyond the time fixed for the commencement of the next term, when such continuance is necessary.

I have recited at some length the various provisions relating to the presiding judge for the reason that the question that confronts one immediately at the outset, on reading this act, is: Has the Legislature in thus providing for a presiding judge of the municipal court created an office, and if so, is the designation by the Legislature of the present police judge of the city of Cincinnati in contravention of the 27th Section of the Second Article of the Constitution, which is as follows:

"The election and appointment of all officers and the filling of all vacancies not otherwise provided for by this Constitution, or the Constitution of the United States, shall be in such manner as may be directed by law; but no appointing power shall be exercised by the General Assembly, except as prescribed in this Constitution and in the election of United States Senators; and in these cases the vote shall be taken *viva voce.*"

It has been held that the only appointing powers prescribed by the Constitution to the General Assembly are those which are embraced in the right given each House of the General Assembly to choose its own officers, and the right given to the Senate by way of advice and consent to participate with the Governor in certain appointments to various state offices. These, together with the right to elect United States Senators constitute the entire appointing power of the General Assembly and beyond this the General Assembly can not go. *State, ex rel Attorney-General*, v. *Kennon et al*, 7 Ohio St., 547.

So that the question must turn in the first instance on the proposition whether the creation of a presiding judge in the manner set out in the act in question is the creation of an office.

In the case of *State, ex rel Hogan*, v. *Hunt*, 84 Ohio St., at page 149, the court discusses to some extent the definition of the term office or officer, and seems to hold that in the absence of a satisfactory definition for the term, that each case should be decided upon its particular facts, and a consideration of the legislative intent in framing the particular statute, by which the position whatever it may be, is created. While it is true that in that case the Supreme Court held that the office of supervising judge of Hamilton county was not such an office as came within the inhibition of the Constitution, nevertheless they hold this solely for the reason that there is nothing in the legislative act to show an intention on the part of the Legislature to create a separate office of presiding judge, but that it is simply a right given to the judges of the court to designate one of their number to perform such duties as they themselves might perform. But no such intention is apparent in the act of creating the municipal court of Cincinnati. The Legislature expressly provides for a presiding judge. It expressly provides for his separate nomination and election. It grants to him a larger compensation that it does to the other justices of the court. It imposes upon him certain specific duties, both public and judicial; such as the general superintendence of the court, the distribution of its business, the keeping of the record of its work, and the reporting of the same to the legislative branch of the city

government, the council; the determination of what judges shall
sit from time to time in the criminal branch, the right to desig-
nate what judge shall examine into and determine the qualifica-
tions of jurors. This is certainly the creation of a public office
such as comes within the purview of the definition laid down in
*High on Extraordinary Legal Remedies,* Section 625, quoted with
approval in *State, ex rel,* v. *Jennings,* 57 Ohio St., 415:

"An office, such as to properly come within the legitimate
scope of an information in the nature of a *quo warranto,* may be
defined as a public position, to which a portion of the sover-
eignty of the country, either legislative, executive, or judicial at-
taches for the time being, and which is exercised for the benefit
of the public."

I might well apply to this act in question the reasoning of
Judges Johnson and Donahue, in the dissenting opinion in *State,
ex rel,* v. *Hunt, supra,* wherein at page 159, they say:

"It would seem to be clear, that the duties and functions de-
fined and referred to in the sections of the General Code, touch-
ing the subject of supervising judge, are clearly included in the
definitions of an office as above given. These sections specifical-
ly define these duties and provide that they shall be performed
by a certain and particular judge, designated in the act as super-
vising judge and chosen in the manner provided, for a fixed and
definite term. And these duties and functions are such as can
be performed only by the particular judge chosen in the manner
provided."

In this case we have a particular judge. Certainly when the
Legislature provided that he should be separately nominated
and elected, it must have had in mind that there were particular
public duties placed under his direction and control, in the carry-
ing out of which the particular witness and qualification of the
man for the place should be before the eyes of the electors. The
Legislature does not attempt to group all these judges of the
municipal court and provide that they shall select one of their
number as presiding judge, but it designates the presiding judge
specifically, and commands that the person seeking the office of
presiding judge shall submit his qualifications to the electors

separately and apart from his brethren.    Without going further this seems to indicate beyond the peradventure of a doubt, the legislative intent to create a separate office.    And the further provision as to increased compensation, direction of the examination of jurors, making the report to council and other matters referred to above, only strengthen this view.

In *State, ex rel,* v. *Anderson,* 45 Ohio St., 196, the Supreme Court held that the president of a city council, elected by the members of council out of their own number was a public officer and his place a public office; and at page 199, they say:

"It is true the place is without emolument, but that is not a necessary incident to an office; nor is it to be denied that character, because the incumbent is chosen by a limited elective body, composed of public officers.    Many public officers are so chosen. The term of his office is fixed and its functions, which are of a public nature, and for public purposes, are bestowed and prescribed by statute.

"These public functions, pertaining to the office of president, are in addition to, and different from those of members of the council.    He is by virtue of his position, the presiding officer of the organized body, appoints its committees, and becomes, *ex officio,* a member of certain boards; and all by-laws, resolutions and ordinances are required to be authenticated by his signature. Of such consequence was the office considered by the Legislature that it was deemed proper to provide that no business should be transacted by the council until an occupant was chosen."

How easily we can apply this language to the case at bar. Here we have the presiding judge, with his term, his functions, his emoluments, his election prescribed by statute.    His functions are in addition to and different from the other judges created for the court.    He is required to distribute the business of the court and to make the report of this business to council.    He is charged with the duty of seeing that jurors are properly investigated and interrogated with reference to their qualifications. There is no other conclusion but that the Legislature in providing for a presiding judge for the Municipal Court of Cincinnati, created a public office.

The further question then remains:    Has the Legislature by designating the present police judge of Cincinnati to fill this

office, violated the provisions of Section 27, Article II of the Constitution? In designating the present police judge of the city of Cincinnati the Legislature just as much confined the filling of the office to a particular man as if they had designated him by name, and surely no one will admit of any power in the Legislature to create an office and then designate the person by name to fill it. This is precisely what the Legislature attempted to do in the act under consideration by the Supreme Court in *State, ex rel Attorney-General,* v. *Kennon, supra,* and the court distinguishes between the right to make an appointment and the right to prescribe how the appointment shall be made; the making of the appointment being administrative and the right to prescribe how and when it shall be done being legislative, the legislative function of necessity preceding the administrative function.

The Supreme Court in that case denied the right in the Legislature to appoint by name three persons and prescribe for them the duty of appointing and removing certain officers of the state, and I can not see in what respect the action of the Legislature there can be differentiated from the action of the Legislature in the case at bar. In the former case the Legislature designated certain persons by name. In the latter case they have simply designating the person by referring to him in his official capacity, and in such a manner as there can be no mistake as to who was intended to be appointed.

It is therefore clear that in so far as the attempt to appoint the present police judge of the city of Cincinnati as presiding judge of the municipal court, the act is contrary to the Constitution.

If the act is unconstitutional in so far as the presiding judge is concerned, the act in so far as it provides for the appointment and election of associate judges must necessarily be ineffectual.

The duties prescribed in the act for the presiding judge are so bound up with the duties set forth for the associate judges, and the duties prescribed for the associate judges are so dependent upon the duties set forth for the presiding judge that it was manifestly not the intention of the Legislature in passing the act that

the provisions with reference to the presiding judge should be separable from the provisions with reference to the associate judges. In fact the very act itself shows they are non-separable, and therefore if there can be no presiding judge, there can be no associate judges, and therefore no court. The purpose of the act can not be effectually carried out with the concomitant existence of the presiding judge and the associate judges. This consequently makes the entire act inoperative. *Commissioners* v. *State, ex rel*, 50 Ohio St., 653.

Therefore it is evident that there is no municipal court to which these causes can be removed.

In considering this question I have had at all times before my mind the ancient rule that all presumptions are in favor of the constitutionality of legislative acts, and that all doubts must be resolved in favor of their constitutionality. It is always an office of great delicacy and responsibility to pass upon the acts of a co-ordinate branch of the government when the question is whether or not they do square up with the Constitution of the state. It is no pleasant duty to be compelled to overrule the acts of this great co-ordinate branch, and it is therefore a duty which I have approached with some misgiving and would gladly have evaded. But I feel that it is still the rule where the court is of the opinion that the legislative act under its consideration is in conflict with the Constitution, the duty to so declare is imperative, and it would be a violation of his oath of office to evade the issue when it is squarely presented to him.

For the reasons, therefore, stated above, I think this act in question is in conflict with the Constitution of the state of Ohio.

Other points were made by counsel regarding the alleged constitutionality of other portions of this act. There is no necessity to pass specifically upon them at this time, in view of the fact that it seems that the whole act is inoperative.

The writ of mandamus as prayed for in the Ruby case will be denied, and the injunction in the Baker case will be granted.